UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**DAVID ZEHNER,**

**Plaintiff,**

-v-                                    **5:11-CV-1202 (NAM/DEP)**

**THE BOARD OF EDUCATION (the "Board") OF THE JORDAN-ELBRIDGE CENTRAL SCHOOL DISTRICT (the "District") and MARY L. ALLEY, DIANA FOOTE, JEANNE PIEKLIK, CONNIE DRAKE, PENNY L. FEENEY, LAWRENCE J. ZACHER, DANNY LOUIS MEVEC, and JAMES R. FROIO, individually,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

O'Hara, O'Connell & Ciotoli
Dennis G. O'Hara, Esq, of counsel
Stephen Ciotoli, Esq., of counsel
7207 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

Office of Frank W. Miller
Bryan N. Georgiady, Esq., of counsel
Charles C. Spagnoli, Esq., of counsel
6575 Kirkville Road
East Syracuse, New York 13057
Attorneys for Defendants Board of Education of the
Jordan-Elbridge Central School District, Mary L. Alley,
Diana Foote, Jeanne Pieklik, Connie Drake, Penny L.
Feeney, and James R. Froio

Office of D. Jeffrey Gosch
D. Jeffrey Gosch, Esq., of counsel
120 East Washington Street, Suite 731
Syracuse, New York 13202
and
Burke, Scolamiero, Mortati & Hurd, LLP
Thomas J. Mortati, Esq., of counsel
Judith B. Aumand, Esq., of counsel
7 Washington Square
Albany, New York 12212

Attorneys for Defendant Lawrence J. Zacher

Danny Louis Mevec
Mevec Law Firm, PLLC
206 North Townsend Street
Syracuse, New York 13203
Defendant *pro se*

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Plaintiff, employed by the Jordan-Elbridge Central School District ("District") as High School Principal, commenced this action on October 6, 2011, claiming that defendants had subjected him to retaliatory adverse employment actions and defamed him. On a Rule 12(b)(6) motion by defendants District Board of Education ("Board"), Mary L. Alley, Diana Foote, Jeanne Pieklik, Connie Drake, and Penny L. Feeney, and Superintendent of Schools James R. Froio (collectively, "District Defendants"), the Court issued a Memorandum-Decision and Order (Dkt. No. 91) dated September 26, 2013 dismissing the fourth cause of action for defamation against the District and otherwise denying dismissal of the second amended complaint (Dkt. No. 71).

Presently before the Court are summary judgment and related motions addressing the remaining claims: the first cause of action under 42 U.S.C. § 1983 ("section 1983"), alleging retaliation for his exercise of his First Amendment right to freedom of speech; the second cause of action under section 1983, alleging retaliation for his exercise of his First Amendment right to freedom of association; the third cause of action alleging violation of his "whistleblower" protection under section 3028-d of the New York State Education Law; and the fourth cause of action for defamation against certain individual defendants.

The pending motions are as follows:

- Motion (Dkt. No. 162) by defendant Lawrence J. Zacher ("Zacher") for summary judgment;

- Motion (Dkt. No. 164) by District Defendants for summary judgment;

- Motion (Dkt. No. 172) by defendant Danny Louis Mevec ("Mevec") for summary judgment;

- Motion (Dkt. No. 196) by plaintiff to strike decision of Stephen P. LaLonde, Hearing officer, in *Matter of the Arbitration Between Jordan-Elbridge Central School District and William E. Hamilton* (Dkt. No. 166-2), *petition to vacate and annul denied, Matter of Hamilton*, RJI No. 33-14-3422, Index No. 2014EF3535 (Sup.Ct., Onondaga Co., Greenwood, J. Dec. 16, 2014);

- Cross motion (Dkt. No. 197) by plaintiff for summary judgment on the first cause of action;

- Joint motion (Dkt. No. 207) by Zacher and District Defendants to strike plaintiff's "Response to District Defendants' Statement of Material Facts" and "Memorandum of Law in Support of Cross-Motion for Summary Judgment on the First Amendment Retaliation Claim" (at Dkt. No. 197); and

- Motion by plaintiff (Dkt. No. 209) requesting to withdraw his Memorandum of Law (Dkt. No. 197) in support of his cross motion.

As set forth below, the Court grants Zacher's motion for summary judgment (Dkt. No. 162); grants the District Defendants' motion for summary judgment (Dkt. No. 164); grants Mevec's motion for summary judgment (Dkt. No. 172); denies plaintiff's motion to strike (Dkt. No. 196); denies plaintiff's cross motion for summary judgment on the first cause of action (Dkt. No. 197); grants in part and denies in part the motion to strike (Dkt. No. 207) by Zacher and the District Defendants; and grants plaintiff's motion (Dkt. No. 209) to withdraw his Memorandum of Law in support of his cross motion. The case is dismissed with prejudice.

### SECOND AMENDED COMPLAINT

The allegations of the second amended complaint are summarized as follows. Defendants Mary L. Alley, Diana Foote, Jeanne Pieklik, Connie Drake, and Penny L. Feeney were Board

members at the times in issue and were "prime actors" in some or all of the incidents of which plaintiff complains. Defendant James R. Froio ("Froio") has been the District's Superintendent of Schools since May 18, 2011. Defendant Mevec was the attorney for the Board at all relevant times until October 20, 2010, when the Board terminated him. Defendant Zacher was Interim Superintendent of Schools from November 5, 2010 until the Board terminated him on May 16, 2011.

Plaintiff alleges he was a "vocal critic" of the Board's handling of matters involving certain District officials and employees. The alleged incidents include the following. The Board embarked on a campaign to terminate Janice Schue, then Principal of the District's Elbridge Elementary School, and on June 8, 2009, the Board transferred her to a "make-work" position in the central office. The Board, with Mevec's collusion, improperly forced the District Superintendent of Schools Marilyn Dominick ("Dominick") to resign in a severance agreement dated May 5, 2010, and appointed Assistant Superintendent Susan Gorton ("Gorton") as her replacement. In May and June 2010 William Hamilton ("Hamilton"), the District's Assistant Superintendent for Business and Finance, "incurred the wrath" of the Board by recommending Mevec's termination. On July 7, 2010, the Board improperly suspended Hamilton. After plaintiff sent the Onondaga County Bar Association a letter complaining about Mevec's handling of a personal legal matter for plaintiff and his wife, "Mevec and Pieklik retaliated against Plaintiff by a series of actions taken in concert with other defendants that began as early as April 2010 and continue to date with the sole objective of terminating Plaintiff's employment." Plaintiff alleges that defendants perceived plaintiff to be "an associate and supporter" of Schue, Dominick, and Hamilton.

On August 25, 2010, plaintiff brought a special proceeding under N.Y.C.P.L.R. Article 78 ("Article 78") alleging that on July 21, 2010 the Board violated the Open Meetings Law, N.Y. Pub. Officers L. § 100, *et seq.*, when, in executive session, it appointed Gorton as Interim Superintendent to succeed Dominick. On October 1, 2010, New York Supreme Court Justice Donald A. Greenwood held that the Board had violated the Open Meetings Law and that Gorton's appointment was invalid. *Mtr. of Zehner v. Board of Educ. of Jordan-Elbridge Cent. Sch. Dist.*, 958 N.Y.S.2d 311 (Table), 2010 WL 3895339 (N.Y.Sup. Oct. 1, 2010).

The second amended complaint further alleges that on September 20, 2010, "almost immediately after he challenged the Board's illegal appointment of Gorton to succeed Dominick" and in retaliation for plaintiff's speech challenging Gorton's appointment, the Board suspended him from his position as high school principal. The Board found probable cause on charges under Education Law § 3020-a ("section 3020-a") on October 6, 2010, and continued plaintiff's suspension pending the determination of those charges. According to plaintiff, the charges "were filed with actual malice in retaliation for Plaintiff's prior public criticisms and his commencement of the Article 78 proceeding, and without a factual basis or adequate preliminary investigation." Also on October 6, 2010, Board President Mary L. Alley ("Alley") called a press conference "at which she publicly stated, in words or substance, that charges had been filed and that Plaintiff had been suspended because he had endangered the health, safety and welfare of students." According to plaintiff, Alley knew the statement was false when she made it.

The second amended complaint further alleges that on October 18, 2010, the Board – which knew or should have known the charges against plaintiff were unfounded – authorized a contract with a private investigator, Michael Kessler, of Kessler International ("Kessler"). Alley

gave misleading information to the public regarding the cost to the District of Kessler's services. Although Kessler resorted to "improper techniques and methods of compulsion" with the knowledge and approval of the Board, "[t]he end result of Kessler's intrusive and costly investigation was a series of written reports issued to the Board, which clearly concluded that there was no basis for several of the charges."

Despite Justice Greenwood's ruling that the Board had violated the Open Meetings Law, the violations continued. Plaintiff brought a second Article 78 proceeding on November 9, 2010, in which Justice Greenwood held that the Board had continued to violate the Open Meetings Law, awarded attorney's fees to plaintiff, and ordered that the Board members receive training regarding their obligations under the Open Meetings Law; the Appellate Division, Fourth Department affirmed. *Mtr. of Zehner v. Board of Educ. of Jordan-Elbridge Cent. Sch. Dist*., 927 N.Y.S.2d 820 (Table), 2011 WL 1549480 (N.Y.Sup. Jan. 20, 2011), *aff'd* 937 N.Y.S.2d 510 (4th Dep't. 2012).

Plaintiff alleges that he continued to speak at Board meetings despite his suspension, focusing on "the misconduct and waste of public resources" by defendants Board members and Zacher. In retaliation, "Defendant Board members, in collusion with Zacher and others, agreed upon and carried out a plan to suppress Plaintiff s critical speech." For example, defendants "intentionally misquot[ed] Plaintiff's comments [at a December 1, 2010 Board meeting] to make them appear as threats, and ... alter[ed] the ... Board meeting minutes to attribute inaccurate comments to Plaintiff." Also, six Board members and others walked out from a January 19, 2011 Board meeting while plaintiff was speaking during the public comment period, then had plaintiff forcibly removed from the room by an armed guard. In a letter dated January 28, 2011 ("ban

letter"), Zacher, as Interim Superintendent of Schools, banned plaintiff from attending any District activity or entering upon District premises without his prior express written permission.

Plaintiff further states that on March 3, 2011, he commenced an Article 78 proceeding challenging the ban letter, and on April 12, 2011, the Board filed a second set of charges against him. According to plaintiff, many of the new charges were untimely and brought in bad faith. The Article 78 court determined that the question of the validity of the ban should be decided by the Hearing Officer in the context of the section 3020-a proceeding. On January 20, 2012, the first day of the section 3020-a hearing, the Hearing Officer ordered that the ban be lifted. Plaintiff also alleges upon information and belief that a number of the defendants have filed complaints or made reports to law enforcement authorities accusing him of criminal conduct.

On December 7, 2011, the District brought additional charges against plaintiff signed by Froio, Superintendent of Schools since May 18, 2011. The charges were intended to "supplement and amend" the section 3020-a charges against plaintiff dated October 6, 2010 and April 12, 2011. On the same date, Froio filed with the New York State Education Department a complaint seeking to revoke plaintiff's administrative certification pursuant to 8 N.Y.C.R.R. Part 83 ("Part 83"). According to plaintiff, the Part 83 complaint "was filed by Froio in bad faith and with malice, after he knew or had reason to believe that the charges were without merit, in an attempt to bludgeon plaintiff into submission in the pending 3020-a proceeding."

The first cause of action of the second amended complaint is a claim under 42 U.S.C. § 1983, asserting that defendants retaliated against plaintiff for exercising his First Amendment right to freedom of speech. According to plaintiff, as a concerned community resident and a senior administrator in the District, he engaged in protected speech on matters of public concern. In

particular, plaintiff has "spoken out at eight Board meetings, commenced two Article 78 proceedings, and has voiced his concerns in other public arenas over concerns of public interest, including the inefficient financial practices and other unlawful practices of the Board." He also has posted political cartoons about Jordan-Elbridge on his personal Facebook page. In retaliation for this protected speech, he "has been subjected to the following adverse employment actions: false charges and accusations, including false charges under Education Law § 3020-a seeking to terminate his employment, false charges under 8 N.Y.C.R.R. Part 83 seeking to revoke his teaching certification, false claims of endangering children, and an unlawful suspension from his position as High School Principal." Defendants have used the local media and other outlets to publicize numerous false accusations against plaintiff, including accusations that he endangered students.

In the second cause of action, also under section 1983, plaintiff alleges retaliation for his exercise of his First Amendment right to free association. Plaintiff avers that while he was employed by the District, he associated with Dominick, Schue, and Hamilton; that defendants perceived plaintiff and his associates "as endorsing and defending Schue because of their public criticism of the long-term transfer of Janice Schue to the District office from her position as elementary school principal"; and that "due to this perceived association and endorsement, Plaintiff has been subjected to false charges and other retaliatory actions." Similarly, plaintiff alleges, his associations with Hamilton, the Assistant Superintendent of Business and Finance, who was suspended, and Anthony Scro, the Treasurer, who was terminated, have made him the target of the Board in violation of his freedom of association.

The third cause of action is based on section 3028-d of the New York Education Law,

which protects school employees who report information regarding illegal or inappropriate financial practices from civil liability and retaliatory action. Plaintiff avers that he challenged a number of the Board's financial practices and that in retaliation "the Board has subjected Plaintiff to false charges and accusations, false claims of endangering children, false statements of being disruptive and unprofessional and physically threatening a Board member, forcefully removing Plaintiff from a Board meeting, illegally reprimanding him and banning [him] from District activities and premises."

The fourth cause of action sounds in defamation under New York common law. Plaintiff claims that defendants made defamatory statements regarding him and that defendants knew the statements were false or made them with reckless disregard for the truth. Specifically, the second amended complaint alleges that on October 6, 2010, Board President Alley held a press conference at which she falsely stated to the press and public that plaintiff had endangered students; that on an unspecified date, Connie Drake, a Board member, "was at a band show at Baldwinsville, and stated to several community members that the charges against Plaintiff were 'horrific' although the content of the charges were meant to be confidential"; and that on January 28, 2011 Zacher wrote the ban letter making false statements, including statements that plaintiff had made threats against Board members, had conducted himself "in a highly inappropriate and unprofessional manner" since October 2010, and was "disorderly" at the October 6, 2010 and January 19, 2011 Board meetings.

The relief sought in the second amended complaint is as follows:

> ... Plaintiff makes demand for damages for the violations of his First Amendment rights to free speech and freedom of association. Plaintiff also seeks any and all damages for personal and psychological injury, emotional distress, loss of reputation and his good name, special damages for medical

-9-

treatment and prescriptive medication, as well as claims under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §1983, for violation of Plaintiff's rights under color of state law, and attorney's fees under § 1988.

## HEARING OFFICER'S DECISION ON SECTION 3020-a CHARGES

On February 17, 2015, Hearing Officer Frederick Day issued a decision on all charges against plaintiff under section 3020-a of the Education Law. He held that all charges were unfounded except the charge of insubordination in connection with the October 6, 2010 Board meeting. He found the charges regarding the grade-change issue were frivolous. He ordered plaintiff reinstated as high school principal and imposed a $2,000 fine against plaintiff.

## APPLICABLE LAW

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the burden shifts to the non-movant to adduce evidence establishing the existence of an issue of material fact. *See Linares v. McLaughlin*, 423 Fed.Appx. 84, 86 (2d Cir. 2011). If the non-movant fails to make such a showing, the movant is entitled to summary judgment. When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Conclusory statements or mere allegations, however, are not sufficient to defeat a summary judgment motion. *Id.* Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

-10-

Specifically, regarding a First Amendment claim for retaliation by a public employee such as plaintiff, the Second Circuit explains:

> [A public employee] making a First Amendment retaliation claim under § 1983 must initially demonstrate by a preponderance of the evidence that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (*Mount Healthy City*). If a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action "even in the absence of the protected conduct." *Id*. at 287, 97 S.Ct. 568. ...
>
> ***
>
> The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech. *See Mount Healthy City*, 429 U.S. at 287, 97 S.Ct. 568. Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. *See Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990). Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision.

*Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *accord Howard v. City of New York*, 602 Fed.Appx. 545, 549 n.3 (2d Cir. 2015); *Deep v. Coin*, 453 F. App'x 49, 52 (2d Cir. 2011); *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir.1998). Thus, "even if there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech." *Heil*, 147 F.3d at 110 (quoting *Mt. Healthy City*, 429 U.S. at 287); *accord Nagle v. Marron*, 663 F.3d 100, 111 (2d Cir. 2011) ("[P]rotected speech could not substantially cause an

-11-

adverse action if the employer would have taken that action in any event[.]").  The Supreme Court has stated that, once an employer has articulated a legitimate, non-retaliatory reason for the adverse employment action, a plaintiff must demonstrate that the proffered reason is pretext for retaliation and that the plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer." *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).[1]

## DISCUSSION

## FIRST CAUSE OF ACTION:
## RETALIATION FOR EXERCISE OF RIGHT TO FREE SPEECH

**Collateral Estoppel**

Plaintiff argues that on these motions he should benefit from the application of the doctrine of collateral estoppel to the findings in his favor by Hearing Officer Frederick Day in the section 3020-a proceeding.  In addition, with respect to whether Zacher acted improperly when he issued the January 28, 2011 letter banning plaintiff from entering school district grounds, plaintiff asks the Court to give preclusive effect to Day's order on January 19, 2012, the first day of the section 3020-a hearing, lifting the ban.  Issue preclusion cannot, however, apply against any defendant who was not a party to the disciplinary proceedings, and any such preclusion as against Zacher is denied.  Likewise, plaintiff cannot benefit here from Day's findings in his favor regarding the conduct of Mevec, because Mevec was not a party to the section 3020-a proceeding.  With respect to whether collateral estoppel is applicable against the District, the Court is aware

---

[1] *Nassar* is a Title VII case; however, because section 1983 and Title VII retaliation cases are analyzed under the same framework, *see Lewis v. City of Norwalk*, 562 Fed.Appx. 25, 29 (2d Cir.2014) the same "but-for" standard applies. *See, e.g., Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d 304, 321, n.10 (E.D.N.Y.  2014).

that the Second Circuit in *Burkybile* affirmed an award of summary judgment dismissing a school administrator's section 1983 action, where the district court had given preclusive effect to a section 3020-a hearing officer's findings upholding the school board's discharge of the administrator. 411 F.3d 306, 312. Here, unlike *Burkybile*, it is the plaintiff who invokes the doctrine of collateral estoppel. Plaintiff did not have the burden of proof in the 3020-a hearing. This shift in the burden of proof renders the issues in the 3020-a hearing non-identical to the issues in the instant case, thereby making collateral estoppel inapplicable. *See Cobb v. Pozzi*, 363 F.3d 89, 113-14 (2d Cir. 2004). Plaintiff's request to give preclusive effect to the hearing officer's findings in his favor is denied.

**Counseling Memos**

Regarding plaintiff's work history with the District, the record includes each counseling memo issued to plaintiff. The Court briefly summarizes each counseling memo below. In response to the District Defendants' Statement of Material Facts referencing each counseling memo, plaintiff "denies" each one, although he does not dispute that the counseling memos were issued. Rather, with respect to each counseling memo, he avers that its timing shows it was meant to create a paper trail against him and that the motivation of the person who issued it was retaliatory and not based on job performance issues. His additional responses are also summarized below.

On June 30, 2009, Assistant Superintendent Gorton issued a counseling memo regarding five District-owned digital cameras missing from the high school and plaintiff's lack of response to her June 26, 2009 inquiry about "the process for getting the cameras back." Gorton stated that "[t]here does not appear to be any kind of tracking system that I am aware of at the high school

for the return of digital cameras."  In his deposition, plaintiff acknowledges that there were two

cameras missing from a photography class at the end of the 2008-2009 school year.  He adds that

he and another staff person "sent, I believe, 60 pages of documentation to Sue on everything we'd

done to try and retrieve these two cameras."  In his response to the District Defendants' Statement

of Material Facts, he adds, without citation to the record, that the counseling memo was removed

from his personnel file after an investigation by Dominick.

On September 28, 2009, Gorton issued a counseling memo noting plaintiff's

unsatisfactory "written communication skills" and the need for him to proofread his work. Gorton

specified three documents he had drafted, two of which contained typos and other errors.  She

also addressed the content of the documents.  Plaintiff responds that these errors are "a minor

matter" and states that he has had a "learning disability since childhood that has caused him

problems with his written communications."

On October 1, 2009, Dominick issued a counseling memo stating: "The purpose of this

communication is to express to you my frustration at your failure to comply with my requirement

to submit your annual goals in the proper form (SMART Goals Template is attached) and your

failure to schedule a monthly meeting with me for August and September."  Plaintiff responds

that he did give Dominick his goals, although admittedly not in the proper form, on July 20, 2009.

On January 21, 2010, Dominick issued a counseling memo stating her "concern[] that you

have a habit of frustrating students, even some who have anger management issues, by using what

you believe to be humor to embarrass and/or provoke them."  She recounted an incident in which

plaintiff allegedly embarrassed a student in front of other students, and she added: "By  your own

admission, you must do a better job of thinking before you act or speak."  She also states: "From

our conversation, I feel confident that you are committed to making sure this does not happen again.  If it does, a more thorough investigation, including the interviewing of witnesses, will take place and a more formal reprimand process will be completed."  Plaintiff disputes that the student was embarrassed by the incident in issue.

On February 4, 2010, Gorton issued a detailed counseling memo stating that plaintiff's job performance in the area of staff evaluations was deficient and that he was not properly documenting them.  Plaintiff disputed certain facts in the counseling memo.

On March 23, 2010, plaintiff sent Dominick an email stating that earlier that day two students had told him that the sister of one of the students had been involved in an accident over the weekend in which she "lost her middle finger to the knuckle[.]"  Plaintiff admittedly asked the injured girl's sister, "Is it too early to call her stubby?"  He said the girls responded, "that is wrong," and he apologized "several times."  On March 29, 2010, Dominick sent plaintiff a counseling memo listing a number of actions she would be taking as a result of the March 23, 2010 incident.  She stated:

> The purpose of this communication is to summarize our conversation this morning.  Also present this morning was Brad Hamer, your union representative and the attorney provided for you by your union.  I provided you at that time with a summary document of our previous conversation of March 23rd.
>
> This morning, I made you aware that, after taking statements from the students and parents involved on Friday, March 26th, I turned the further investigation of this matter and other incidents over to school district counsel, Dan Mevec.  I will be meeting with Mr. Mevec this afternoon to review my findings.
>
> Also this morning, I made you aware of why I had asked you to limit your contact with students over the weekend.  In discussing the matter further, we all agreed it would be best if you were to work at home for the remainder of the week, and only come in to the District Office if needed.

Dominick sent an email to the Board about the incident and stated that she contacted attorney Randy Ray about "appropriate discipline and he advised that an investigation, with statements taken from all parties be done, followed by a formal 3020 [illegible] hearing for the file."

On April 4, 2010, Gorton issued a counseling memo regarding an employee evaluation written by plaintiff and setting forth in detail the deficiencies in the evaluation and his written summary thereof. Plaintiff responded that he followed a specific model for written observations but that no training was provided on how to follow this model.

On April 6, 2010, Dominick sent a counseling memo regarding a written complaint from a ninth-grade student to the effect that plaintiff had "spoken negatively about him to a student from [another school district]." She stated: "You admitted to me that you had warned the girl [from the other school district] that [name redacted] might not be the type of boyfriend she should have, and listed for her several character flaws that you've observed in [name redacted]." She added: "By talking to someone about a Jordan Elbridge student, you have violated our student's privacy and defamed his character." Dominick continued: "I had spoken with you several weeks ago and as recent as the last couple of weeks about putting an end to your inappropriate comments, both inside and outside of school. Yet you continue to practice this behavior." Plaintiff wrote a responsive memo admitting telling the female student from another school district that the Jordan-Elbridge student was a "bad breaker-upper[,]" but denying giving her "specifics of the young man's transgressions[.]"

On May 6, 2010, Dominick sent a counseling memo to plaintiff and an email to the Board regarding the hiring of a hypnotist for the after-prom party. Dominick stated that when she discussed the matter with plaintiff on May 6, 2010, he told her he "may have signed off on

payment of something" for the after-prom party, but that the form "included a company name, but had no indication that it was to pay a hypnotist." Dominick then obtained from the Business Office a copy of a down payment for the hypnotist signed by plaintiff on March 16, 2010. The document clearly states it is for a hypnotist. Dominick's email to the Board states that plaintiff had "left out several details" when she discussed the matter with him and had "misrepresented the truth when he told me that he did not know about the planned event." Plaintiff responds that he never misrepresented any facts. According to Dominick's deposition, plaintiff defended his actions on the ground that he was "too busy to read what he signs."

On May 12, 2010, Gorton wrote a counseling memo regarding plaintiff's unsatisfactory work evaluating staff under his supervision. She wrote: "I am puzzled as to why [name redacted] would receive all Level 4 marks on her performance review when there is sufficient evidence to suggest the contrary. Your disregard for collaborating with the Director of Operations and me in evaluating staff in order to meet the needs of the school district is not only unacceptable but irresponsible." In his response, plaintiff disputes certain facts.

On May 20, 2010, plaintiff received a counseling memo from Dominick addressing his "improper handling of the matter of copy services, the new machines and the codes assigned to our users." The memo's concluding paragraph states:

> Your actions are clearly unsupportive of well-defined district procedures. I know that you understand this, based on an e-mail you sent to your staff on May 12, 2010, shortly after the arrival of the new copiers. And yet, you chose yesterday to challenge the directive about copy services. District systems are in place and are necessary to make sure tax payer dollars are spent carefully. Your behavior erodes those systems and forces me to question your loyalty to this learning community. When you are notified of procedures, you are expected to follow those procedures without question. If you have an idea to improve a system, please bring it to my attention, instead of blatantly protesting and treating your non-instructional colleagues in the Administrative

-17-

Leadership Team with a lack of respect.

Plaintiff's memo to Dominick in response acknowledges that he posted the copier codes inside the cabinet over the office copier but denies knowing they were confidential. In his response to the District Defendants' Statement of Material Facts he states that the codes were only half of what was needed to make copies, so there was no compromise of copier security.

On May 26, 2010, Gorton issued a counseling memo stating: "I have found that 1) you are not following procedures established in the Jordan-Elbridge Central School District and 2) you are not requiring your staff to follow procedures." This issue involved the enrolling of plaintiff's own daughter as a student in the District without having a second administrator sign off on his actions since they pertained to a family member. Plaintiff has an explanation for his actions but does not allege he had another administrator sign off.

On June 7, 2010, Gorton issued a counseling memo noting her "serious concerns about your ability to communicate effectively in writing" and stating that certain written teacher tenure evaluations that he had written contained "little evidence of any kind of attention to spelling, the editing process or sentence structure." Plaintiff responded that he is "learning disabled in the area of written expression" and has "difficulty" in this area of communication. Gorton responded on June 11, 2010 that she has "no knowledge" that plaintiff had been identified as learning disabled in this area. She stated: "If you would like to come in and meet with me to discuss reasonable accommodations to address your needs, please let me know."

On August 9, 2010, Dominick issued a counseling memo expressing her "extreme disappointment with [plaintiff's] failure to follow the established process for the selection of new textbooks." She added that plaintiff's presentation of a new school textbook to the Board of

Education on August 4, 2010 "was poorly planned and executed" and that an inaccurate purchase order was submitted for the textbook. The memo further stated plaintiff's actions were "not acceptable" and that he "must improve [his] attention to these details." Dominick testified at her deposition that she received a complaint from the Board of Education about the poor quality of the presentation. Plaintiff disputed certain facts in the counseling memo but acknowledged that the presentation was "below our standards and I apologize to you for that fact."

On September 10, 2010, Dominick issued a counseling memo regarding plaintiff's issuance of a diploma to a student "without proper documentation of course work needed to graduate." Dominick also addressed the tone plaintiff used in discussing the matter with her. She stated that plaintiff's tone was "not appropriate or acceptable in any conversation with a colleague, and certainly not the Superintendent of Schools." The memo continued: "In the future, you will address me and all colleagues appropriately. To clarify, this means that you will not raise your voice, use sarcasm, a negative tone or tone that can be construed as bullying with any colleague. This behavior will not be tolerated and will be formally addressed by me." Plaintiff disputed a number of factual matters underlying this counseling memo.

On September 15, 2010, Dominick issued a counseling memo advising that plaintiff's "recent handling of a student discipline matter in which three students were found to have cigarettes in their possession at the high school during school hours is unacceptable." The memo noted that, although it was a violation of school rules for students to bring cigarettes, "after determining that students possessed cigarettes at the high school, you not only did not render any discipline, but you returned the cigarettes to the students at the end of the day." She stated: "Once again, you have shown blatant disregard for established procedures and rules." Plaintiff

responded that by disputing the allegations, although in his 3020-a testimony he acknowledged returning the cigarettes.

The record also contains a counseling memo from Dominick dated September 21, 2010 citing plaintiff's failure to proofread all written communication and stating that, in preparation for the High School Open House held on September 16th, plaintiff sent a written communication to parents containing several typographical errors. She stated: "Once again, I am concerned that you have not followed direction given in checking your work and/or having someone proofread your documents."

**September 20, 2010 Suspension and October 6, 2010 Charges**

Defendants have amply demonstrated that the suspension of plaintiff on September 20, 2010 and the bringing of the October 6, 2010 section 3020-a charges against him was "in the works" well before plaintiff's first Article 78 proceeding on August 25, 2010, or any previous alleged protected speech. Indeed, as set forth above, plaintiff had been receiving counseling memos beginning on June 30, 2009. Plaintiff's first alleged exercise of his First Amendment free speech rights is his February 2010 participation in a Facebook group supporting Janice Schue and criticizing the District in this respect.[2] He claims that at a meeting [in February 2010] he was told to "drop" the Facebook group and that he did so.[3] There is no temporal proximity with his

---

[2] Plaintiff avers that beginning in June, 2009, he expressed to Dominick his criticism of how the District was treating Schue, but there is no record evidence that Dominick ever mentioned his comments to any of the District Defendants or that they were otherwise aware of the alleged comments.

[3] Plaintiff states that at this meeting he was told that either he should "resign" or the District would go to the "attorney general," and that when he refused to give in to this threat, the counseling memos "started the very next month in March 2010." In fact, however, counseling memos had been issued on June 30, September 28, and October 1, 2009, and January 21, and February 4, 2010; thus by the date of the meeting, five counseling memos had been issued.

suspension on September 20, 2010 or the filing of the first 3020-a charges against him on October 6, 2010, and no basis on which a reasonable finder of fact could find a causal connection between the Facebook issue and those two incidents. Moreover, by February 2010, he had received five counseling memos beginning on June 30, 2009.[4]

The next alleged exercise of plaintiff's free speech rights was his filing of the August 25, 2010 Article 78 proceeding. It is true that there was a proximity in time between the Article 78 proceeding on the one hand, and the September 20, 2010 suspension and October 6, 2010 section 3020-a charges on the other. Nevertheless, there is no basis to find a causal connection between the Article 78 proceeding and these adverse employment actions, and no reasonable factfinder could conclude that the adverse employment actions would not have been taken "but for" the Article 78 proceeding. Support for this conclusion is found in the sworn evidence of then-Board members Connie Drake, Diana Foote, Jeanne Pieklik, Mary Alley, and Penney Feeney to the effect that they would have voted in favor of the October 6, 2010 charges regardless of plaintiff's exercise of his free speech rights. Their evidence is strongly supported by the 15 counseling memos issued against plaintiff by August 25, 2010 and the deposition testimony of Dominick, then Superintendent of Schools, and others regarding these counseling memos. Many of the incidents in the counseling memos were specified in the October 6, 2010 section 3020-a charges; others were specified in the later section 3020-a charges. Dominick testified at her deposition that on or before March 26, 2010, Randy Ray, an attorney with the Cayuga-Onondaga BOCES who provided labor relations advice to the District, recommended to her that the District consider

---

[4] Plaintiff did not plead the Facebook issue as a distinct First Amendment claim and there is no claim that he was "chilled" in his exercise of his rights or suffered some concrete injury with respect to the Facebook issue.

bringing section 3020-a charges against plaintiff. Based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same actions in the absence of the protected speech.

**January 19, 2011 Removal; January 28, 2011 Ban Letter; April 12, 2011 Charges**

Plaintiff spoke at Board meetings on the following dates: October 6, November 4, November 17, December 1, and December 23, 2010, and January 5 and 19, 2011. Plaintiff filed his second Article 78 proceeding on November 9, 2010, and a third on March 3, 2011.

On January 19, 2011, plaintiff was removed from the Board meeting, and on January 28, 2011 Zacher issued the letter ("ban letter") advising plaintiff: "[Y]our privileges to attend meetings of the Board of Education, or any other activity or function on school premises are revoked." On March 3, 2011, plaintiff brought an Article 78 proceeding challenging the ban letter. On April 12, 2011, the Board filed two more section 3020-a charges against plaintiff. The first concerns his conduct and statements at Board meetings. The second concerns the grade-change issue and the unauthorized issuance of diplomas to two students.

*1. January 19, 2011 Removal; January 28, 2011 Ban Letter; April 12, 2011 Charges Concerning Plaintiff's Conduct at Board Meetings*

The Court here considers whether a reasonable jury would have to find that – in the absence of plaintiff's protected speech – defendants would have removed him from the January 19, 2011 meeting, banned him from attending further meetings, and pursued the April 12, 2011 charges insofar as they concern his conduct at Board meetings. The following from the Second Circuit's decision in *Hiel v. Santoro* is particularly helpful on this issue:

> It is by now well established that a public employee's freedom of speech is not absolute, for the government has a legitimate interest in promoting the efficiency of the public services it performs through its employees. A public

-22-

employee who seeks to recover on the ground that he has been disciplined because of the exercise of First Amendment rights must establish, as an initial matter, that his speech may be fairly characterized as constituting speech on a matter of public concern, and that that speech was at least a substantial or motivating factor in the adverse action taken by the employer. If the employee meets these burdens, the government employer may nonetheless escape liability in either of two ways.

First, the government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities, and can persuade the court that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech. Substantial weight is accorded the government employer's prediction that given speech has the potential for disruptiveness, but its prediction must be reasonable....

Second, even if there is evidence that the adverse employment action was motivated in part by protected speech, the government can avoid liability if it can show that it would have taken the same adverse action in the absence of the protected speech. This principle prevents an employee who engages in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected conduct.

147 F.3d 103, 109-110 (2d Cir. 1998) (citations and quotation marks omitted).

With respect to the January 19, 2011 removal of plaintiff from the Board meeting, the record – in particular the video of the incident – fully support defendants' evidence that they would have taken the same action in the absence of plaintiff's protected speech. Plaintiff engaged in unprotected conduct at the meeting when he continued to talk about personnel matters, which he was instructed not to do; proposed that he be restored to his position as Principal; refused to cease speaking at the request of the Board after his time was up; raised his voice and spoke over the Board members, resulting in shouts from the audience; and continued raising his voice until he was shouting while members of the audience shouted and clapped. After plaintiff resumed his seat and six Board members left the room and went into the hallway, plaintiff again incited the audience by stating loudly, "Can we assume that other people can now take their places as board

-23-

members and vote?" This prompted one member of the audience to go and stand behind the then-empty chair of the Board President for a brief time before returning to her seat in the audience. Michael Quigley, a deputy sheriff, was present at the January 19, 2011 Board meeting in an off-duty secondary employment capacity as an employee of the District. Quigley testified in his deposition that, after plaintiff was told his time was up, Quigley approached him and said, "Please stop"; that plaintiff "didn't honor" that request but "continued yelling"; that there came a point when plaintiff's conduct was becoming "extremely disruptive"; and that members of the crowd were "yelling extremely loudly and were visibly angry." Quigley added that when, after plaintiff stopped speaking, the Board asked to have plaintiff removed from the building, Quigley said that "it was a reasonable request because he had disrupted the meeting and they wanted him removed – ... to not allow further disruption. So I thought was a reasonable act." In an affidavit dated March 22, 2011, Quigley stated that, after plaintiff finished speaking and six Board members had left the room, the following occurred:

> 26. After several minutes, I noticed the Board President, Mrs. Alley, and the Superintendent, Dr. Zacher motioning for me from the hallway.
> 27. When I got to them, I noticed that Mrs. Alley appeared visibly upset. She was on her cell phone talking to the District's attorney, Mr. Frank Miller.
> 28. Mrs. Alley gave me the telephone, and Mr. Miller asked my assessment of the situation.
> 29. Mr. Miller asked me what the options were for restoring order to continue the meeting.
> 30. During that brief conversation with Mr. Miller, I responded that I believed Mr. Zehner had disrupted the meeting and the Board and Mr. Miller requested that Mr. Zehner be removed from the building.
> 31. Mr. Miller, Dr. Zacher and Mrs. Alley asked me to go back into the meeting room and ask Mr. Zehner to leave.

The Court concludes that, even though plaintiff's unprotected speech and conduct were related to protected speech, any reasonable jury would have to find that defendants would have taken the

-24-

same actions in the absence of the protected speech.

As for the ban letter, this was issued by Zacher on January 28, 2011, nine days after the January 19, 2011 Board meeting discussed in the previous paragraph. Plaintiff's conduct at that meeting, in addition to the evidence of plaintiff's conduct at other meetings – in particular the October 6, 2010 meeting discussed below – establishes that when Zacher issued the ban letter he had a reasonable basis to believe that the potential disruptiveness of plaintiff's speech at future Board meetings was sufficient to outweigh the First Amendment value of that speech. No reasonable jury could find otherwise.

With respect to so much of the April 12, 2011 section 3020-a charge as alleges "Conduct Unbecoming an Administrator and Insubordination" stemming from plaintiff's conduct at the Board meetings, the Court notes that, although he did not sustain the charges regarding other meetings, Hearing Officer Day sustained the charge of insubordination at the October 6, 2010 meeting. Day found that plaintiff did the following: accused the Board of perjury and of being "heartless and dysfunctional"; stated that he had no respect for Board President Mary Alley; and, during the business portion of the meeting, stated from his seat for others to hear: "I'm not going to sit here and listen to them lie." The hearing officer concluded: "By all standards, these remarks were sufficient to warrant discipline[.]" The Court agrees.

The video of the October 6, 2010 Board meeting shows that a large crowd (estimated by the District to be about 800 people) attended the meeting, at which the Board was to vote on whether to approve the section 3020-a charges against plaintiff. The moderator at the meeting announced that each public speaker would be limited to one minute, although the written agenda had indicated that each speaker would be given five minutes. When he stood up to speak,

plaintiff stated that he would "take the full five minutes." Plaintiff repeatedly stated that the Board had not done their "due diligence" regarding the charges against him. When the moderator advised plaintiff that five minutes were up, plaintiff stated "I'll take another five minutes" – prompting cheers from the crowd – and continued to speak. An unidentified Board member made a comment about being respectful, whereupon plaintiff stated: "You want me to be respectful after the questions you just asked? You're basically trying to run a little, little, uh, thing here about how we can assault Bill Hamilton and Anthony Scro." The crowd cheered loudly. In response to another comment from the moderator, plaintiff stated: "You're talking about my life, sir. This is my - " The moderator then attempted to speak, and plaintiff spoke over him loudly: "No, no, no, no, no, no! This is my entire life. I live here, I work here, this is my life." The crowd cheered loudly. Board President Alley attempted to address plaintiff, saying, "Mr. Zehner" a few times and finally using her gavel, whereupon plaintiff shouted, "I have no respect for you, Mary Alley! I have no respect for you!" to loud cheers and clapping. Based on this meeting alone, the Board had grounds to charge plaintiff with conduct unbecoming an administrator and insubordination. Likewise, plaintiff's conduct on January 19, 2011, as discussed above, was disruptive, disrespectful, and insubordinate and reflected conduct unbecoming an administrator and insubordination. Based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same actions in the absence of the protected speech.

### 2. April 12, 2010 Charges Concerning Grade-change and Diploma Issues

The Court turns to consider the second count in the April 12, 2011 section 3020-a charges, concerning the grade-change matter and the unauthorized issuance of diplomas to two students. Upon thorough review of the record, the Court finds that no rational factfinder could conclude

that the adverse employment actions would not have been taken "but for" the Article 78 proceeding. Support for this conclusion is found in the sworn statements of Board members that they would have voted in favor of the charges regardless of plaintiff's exercise of his free speech rights. Their statements are supported by evidence that the grade-change matter had been an issue since plaintiff's first year at the school, the 2006-2007 academic year. On May 12, 2010, Alicia Mattie ("Mattie"), Internal Auditor, issued a "Grades final audit report" finding: "There are 9 instances where the teacher issued a failing grade that did not agree to the student's transcript issued passing grade of 65"; "[T]here is a lack of documentation that justifies the grade change"; "There were 74 manual grade changes to a '65' [for the year 2008-2009]"; and "Only 2 were substantiated [and] the remaining 72 are unsubstantiated manual grade changes to a '65'." There is evidence that two teachers – Karen Hourigan ("Hourigan") and Sue Osier ("Osier") – alleged that plaintiff changed grades they had given students. At the section 3020-a hearing, Mattie stated that Hourigan had identified by name five students who had received grades that were not the ones she had given. On October 18, 2010, the Board retained Kessler to investigate the issue. Plaintiff acknowledged in his deposition that he had a policy that no grades of 63 or 64 were to be given and that they should be changed to either a 65 or a 62. At the section 3020-a hearing he admitted he changed one of Osier's students' grades from failing to passing without her knowledge. There was testimony at the section 3020-a hearing by Guidance Counselors Jamie Susino and Rob McIntyre that plaintiff had directed them to raise certain students' grades from failing to passing. Hourigan testified that two of her students' grades had been changed from failing to passing without her knowledge. There is also evidence that Mattie reported to the Board additional support for the charge against plaintiff in January and February 2011. While

Dominick concluded that the charge lacked merit, and Kessler issued a report on April 22, 2011 finding that only one teacher specifically stated that plaintiff had changed a grade without her approval, nevertheless, there is ample evidence that this matter had been an issue for years prior to the charge. The Court is aware that the Hearing Officer discussed the issue in great detail in his decision and found that the District had not carried its burden of proof and that the charge was frivolous. Nevertheless, at the time the charge was made, the District had significant evidence supporting the charge. The question in the instant case is not whether the evidence ultimately supported the grade-change charge, but rather whether, but for plaintiff's protected activities, the charge would have been made. With respect to the grade-change issue, based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same action in the absence of the protected speech.

With respect to the unauthorized diplomas, the record shows that Dominick issued a counseling memo dated September 10, 2010 regarding plaintiff's issuance of a diploma to one student "without proper documentation of course work needed to graduate." She wrote that the student to whom plaintiff had improperly issued the diploma completed his course work on the "NovaNet" computer program in an "unsupervised setting"; that plaintiff "took the student's word as the truth and issued a diploma to him without proper review by the assigned teacher and without signatures"; that the student "didn't achieve the benchmark grade of 80% on the final test, and may indeed have even had help on that test;" that even as of the date of her writing of the memo "none of the documents are in place" that were necessary for the proper issuance of the diploma; and that plaintiff had requested the computer system be turned back on so he could have the necessary reports run and signatures completed for the issuance of the diploma "nearly a

-28-

month after [he] made the inappropriate decision to award a New York State diploma" to the student. On September 20, 2010, Dominick issued another counseling memo addressing the use of NovaNet. In fact, as is seen from the section 3020-a transcript, plaintiff acknowledged that on August 4, 2010, he attended a presentation at which the Board was advised that before students were granted credit for NovaNet course work, their NovaNet printouts would be reviewed and signed by an administrator, a guidance counselor, and a teacher in the substantive area. He further admitted that on August 13, 2010, without first printing out the NovaNet course work or having it reviewed and signed by anyone, he provided a diploma to a student who claimed to have fulfilled the last requirements for graduation through NovaNet. Likewise, the record shows that the diploma matter pertaining to the second student arose in 2009 and 2010. As with the grade-change matter, the diploma matter had been a serious concern of the District's well before the filing of the April 12, 2011 charges. With respect to the diploma issue, based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same actions in the absence of the protected speech.

### 3. December 7, 2011 Charges; December 7, 2011; Part 83 Report and February 6, 2012 Amendment

Defendants rely on their affidavits and testimony that they would have taken the same actions on December 7, 2011 and February 6, 2011 in the absence of plaintiff's protected speech, and they submit evidence supporting their assertions. The December 7, 2011 charges alleged that plaintiff had placed inaccurate information in the 2008-2009 High School Faculty Handbook, specifically that he did not correctly describe and identify the responsibility of teachers to make direct reports of suspected child abuse and/or maltreatment, despite the fact that the New York State Department of Education had promulgated guidelines for mandated reporting of such

-29-

matters in October 2007, and that, as a result, an instance of suspected child abuse and/or maltreatment went unreported in 2009 to the child abuse hotline. This was not a new issue. Likewise, the issue of plaintiff's evaluations and observations of probationary teachers during the 2008-2009 school year had been raised in a counseling memo dated April 4, 2010 and again on May 12, 2010. The uncontradicted evidence is that none of the District Defendants had any involvement in or knowledge of the July 22, 2011 letter from William Speck, then Interim Superintendent, to plaintiff's counsel "regarding [plaintiff's] alleged failure to report child abuse," nor is there any basis to believe the District was responsible for Speck's alleged efforts to obtain evidence against plaintiff on this issue.[5] The remaining charges are duplicative, concern issues which had already been addressed, or have been withdrawn. James Froio, Superintendent of Schools, stated that he filed the Part 83 report on December 7, 2011 because it was his "understanding ... that whenever a School District pursues 3020(a) charges against an individual, the superintendent should notify the State Education Department through a Part 83 report." Based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same actions in the absence of the protected speech.

The Court has carefully reviewed this voluminous record. It has viewed the videos of the October 6, 2010 and January 19, 2011 Board meetings. Based on the undisputed facts in the record, the Court holds that no reasonable jury could find for plaintiff on the first cause of action. The first cause of action is dismissed in its entirety on the merits.

## SECOND CAUSE OF ACTION:
## RETALIATION FOR EXERCISE OF RIGHT TO FREE ASSOCIATION

Plaintiff presents no evidence from which a rational finder of fact could conclude that he

---

[5] Plaintiff withdrew his claim against Speck on August 16, 2012.

suffered retaliation as a result of exercising his First Amendment right to association. He points to a comment in a May, 2008 evaluation (before he was awarded tenure) that he should "be careful of [his] alliances," and speculates that this referred to a "perceived" association with Janice Schue, former elementary school principal, although he alleges no significant actual association with her. Likewise, he alleges no significant association with Scro or Hamilton, although he alleges he was perceived as associating with them. He further relies on the February 2010 meeting, at which he alleges he was told to cease participation in a Facebook group supporting Schue. There is no temporal connection between any of this activity and the September 20, 2010 suspension or the October 6, 2010 charges, nor is there any other ground upon which a factfinder could find a causal connection. Plaintiff alleges no significant associational activity after October 6, 2010. Based on the undisputed facts, any reasonable jury would have to find that defendants would have taken the same actions in the absence of any protected association. Summary judgment dismissing the second cause of action is granted as against all defendants.

### THIRD CAUSE OF ACTION:
### RETALIATION IN VIOLATION OF EDUCATION LAW § 3028-d

In the third cause of action, plaintiff claims retaliation against him for reporting "fiscal practices or actions which the employee has reasonable cause to suspect violate any local, state, or federal law or rule and regulation relating to the financial practices of the school or school district." New York Educ. Law § 3028-d. Although plaintiff points to statements he made to the Board regarding "fiscal practices," even on this motion he does not specifically cite to any "local, state, or federal law or rule and regulation" violated by such practices. Thus, the third cause of action is dismissed on the merits as to all defendants.

## FOURTH CAUSE OF ACTION:
## DEFAMATION

In its prior Memorandum-Decision and Order (Dkt. No. 71) the Court dismissed the fourth cause of action for defamation against the District on the ground that the notice of claim was untimely regarding the only statements sufficiently specified therein. The Court now dismisses the defamation claim against Zacher individually because the alleged statements are matters of opinion. Likewise, Connie Drake's alleged statement that the charges against plaintiff were "horrific" is clearly a matter of opinion, and the defamation claim against her individually is dismissed. Mary Alley is the only other individual who is alleged to have made a defamatory statement; the second amended complaint alleges that on October 6, 2010, she "held a press conference and made comments to the press and public about Plaintiff endangering students, which was a false statement." This allegation lacks the specificity required to state a claim for defamation. In any event, it appears for the first time in the first amended complaint, filed December 5, 2011.[6] Thus, it is time-barred. The fourth cause of action for defamation is dismissed on the merits in its entirety against all defendants.

## CONCLUSION

In light of the above, the motions for summary judgment by Zacher, Mevec, and the District Defendants for summary judgment (Dkt. Nos. 162, 164, 172) are granted. Plaintiff's motion (Dkt. No. 196) to strike the decision of Stephen P. LaLonde, Hearing Officer, in *Matter of the Arbitration Between Jordan-Elbridge Central School District and Hamilton* (Dkt. No. 166-2),

---

[6] The initial complaint states that plaintiff "has been subjected to false charges and accusations, false claims of endangering children, false statements of being disruptive and unprofessional and making threats to Board members," but does not specify that any statement was made by Alley and does not set forth a defamation claim.

*petition to vacate and annul denied, Matter of Hamilton*, RJI No. 33-14-3422, Index No. 2014EF3535 (Sup.Ct., Onondaga Co., Greenwood, J. Dec. 16, 2014) is denied. Plaintiff's cross motion (Dkt. No. 197) for summary judgment is denied. Plaintiff's motion (Dkt. No. 209) to withdraw his Memorandum of Law in support of his cross motion is granted. The joint motion (Dkt. No. 207) by Zacher and District Defendants to strike plaintiff's submissions at Dkt. No. 197 is denied as moot as to the Memorandum of Law and is otherwise denied.

It is therefore

ORDERED that the motion (Dkt. No. 162) for summary judgment by defendant Lawrence J. Zacher is granted; and it is further

ORDERED that the motion (Dkt. No. 164) for summary judgment by defendants Board of Education of the Jordan-Elbridge Central School District, Mary L. Alley, Diana Foote, Jeanne Pieklik, Connie Drake, Penny L. Feeney, and James R. Froio is granted; and it is further

ORDERED that the motion (Dkt. No. 172) for summary judgment by defendant Danny Louis Mevec is granted; and it is further

ORDERED that the motion (Dkt. No. 196) by plaintiff to strike the decision in *Matter of the Arbitration Between Jordan-Elbridge Central School District and Hamilton* (Dkt. No. 166-2), *petition to vacate and annul denied, Matter of Hamilton*, RJI No. 33-14-3422, Index No. 2014EF3535 (Sup.Ct., Onondaga Co., Greenwood, J. Dec. 16, 2014) is denied; and it is further

ORDERED that the cross motion (Dkt. No. 197) by plaintiff for summary judgment on the first cause of action is denied; and it is further

ORDERED that the joint motion (Dkt. No. 207) by defendants Zacher and the District Defendants to strike plaintiff's submissions at Dkt. No. 197 is denied as moot as to the

Memorandum of Law and is otherwise denied; and it is further

ORDERED that plaintiff's motion (Dkt. No. 209) to withdraw his Memorandum of Law in support of his cross motion (Dkt. No. 197) is granted; and it is further

ORDERED that the case is dismissed in its entirety on the merits. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

Date:   September 29, 2015
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge